UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                              |   |                        |
|----------------------------------------------|---|------------------------|
| CYNTHIA L. MOMPOINT,                         ) |                        |
|                                              ) |                        |
| Plaintiff,                                   ) |                        |
|                                              ) |                        |
| v.                                           ) |                        |
|                                              ) | No. 18-cv-11094-DJC    |
|                                              ) |                        |
| DEPARTMENT OF ELEMENTARY AND                 ) |                        |
| SECONDARY EDUCATION, HEATHER                 ) |                        |
| PESKE, and HELENE BETTENCOURT,               ) |                        |
|                                              ) |                        |
| Defendants.                                  ) |                        |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                    **April 30, 2019**

**I.      Introduction**

Plaintiff Cynthia Mompoint ("Mompoint") has filed this lawsuit against Defendants the Department of Elementary and Secondary Education ("Mass DOE"), Assistant Commissioner Heather Peske ("Peske") and Director Helene Bettencourt ("Bettencourt") (collectively, "Defendants") alleging violations of Title VII of the Civil Rights Act of 1964 and defamation. D. 23. Defendants have moved to dismiss the now amended complaint. D. 26. For the reasons stated below, the Court ALLOWS Defendants' motion.

**II.     Standard of Review**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation

1

omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

The Court will dismiss a pleading that fails to include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" García-Catalán, 734 F.3d at 102. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557) (alteration in original). "In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" García-Catalán, 734 F.3d at 103 (alteration in original) (citation omitted). "This context-specific inquiry does not demand 'a high degree of factual specificity.'" Id. (citation omitted).

When a plaintiff is *pro se*, the Court must apply a liberal reading to the complaint and hold *pro se* litigants to a less stringent pleading standard. Green v. Commonwealth of Mass., 108 F.R.D.

217, 218 (D. Mass. 1985). A *pro se* plaintiff, however, must still comply with procedural and substantive law and "dismissal remains appropriate . . . when the complaint fails to even suggest an actionable claim." Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001).

### III. Factual Background

The following facts are taken from Mompoint's amended complaint, D. 23; D. 23-1, and the Court accepts them as true for the purposes of resolving this motion. Mompoint is a former employee of Mass DOE. D. 23-1 ¶ 1. In or about July 2011, Mompoint applied for a permanent position in the Teacher Quality unit at Mass DOE but received a temporary position instead. D. 23-1 ¶ 4. Mompoint's temporary employment was funded through a federal "Race to the Top" grant. D. 23-1 ¶ 1. There were seven temporary employees, including Mompoint, who were funded by Race to the Top through 2015 and worked in a unit led by Defendant Peske. Id. Five of the employees were white and two of the employees, including Mompoint, were black. Id. Two years before her funding through Race to the Top ended, Mompoint applied for a permanent "Educator Quality" position within Mass DOE but did not receive it. D. 23-1 ¶ 4. In 2015, Mompoint's temporary position ended. D. 23-1 ¶ 1. The five white employees funded by Race to the Top were either moved to permanent positions within Mass DOE or given state funding, but the black employees were both terminated. Id. At some point, an unnamed "supervisor [was] hired over [Mompoint]" who was less qualified for the position and "did not have the leadership experience, supervisory experience, education experience, or the caliber of education that [Mompoint] had." D. 23-1 ¶ 7.

Mompoint alleges that Mass DOE's "practice of denying blacks promotions and limited opportunities for advancement is systemic" and that based on her "observation and communication with black employees (both former and current), [Mass DOE] rarely selects black employees for

professional development opportunities" that are necessary for obtaining permanent positions. D. 23-1 ¶ 5. According to Mompoint, Mass DOE has data showing that of the thirty-four white employees hired under the Race to the Top grant, thirteen resigned or retired before the grant expired and seventeen of the remaining twenty-one were given other funding or positions and remained employed at Mass DOE after the grant ended. D. 23-1 ¶ 3. In contrast, of the five black employees hired under the grant, one resigned, one was retained and the other three were released. Id.

Mompoint further alleges that she was treated differently than white employees in terms of her ability to telecommute and bring her children to work. In February 2015, Peske denied Mompoint's request to work from home for medical reasons, even though a white employee had received permission to telecommute for medical reasons for approximately twelve months in 2013. D. 23-1 ¶ 9. After Mompoint gave Peske a doctor's note, however, she was permitted to telecommute. Id. Mass DOE did not have a formal telecommuting policy. Id. In June 2015, Mompoint requested to telecommute but was denied. Id. Mompoint does not state whether she submitted a doctor's note on this occasion. Regarding children in the workplace, Mompoint alleges that when she brought her child to work, her supervisor told her children were not allowed in the workplace, even though white co-workers had previously brought their children to work. D. 23-1 ¶ 10.

Mompoint also alleges that while employed by Mass DOE, Peske engaged in "defamation of character" against her. D. 23-1 ¶ 8. This allegation arises from comments posted on a "staff recognition board" that Peske implemented for her unit. Id. Peske posted compliments about members of the staff weekly. Id. Mompoint alleges that Peske only posted compliments for staff members of color about once per month. Id. When Peske posted compliments about Mompoint's

work, she used words such as "good," while using words such as "great" or "excellent" to describe white employees' work. Id. Mompoint alleges that Peske's words "cast[] a perception of 'mediocrity'" on Mompoint's work, which in turn affected how certain colleagues interacted with her. Id. After the alleged disparity was communicated to Peske, Peske "started to use a variety of word[s] [] to describe all staff members including staff of color." Id.

## IV. Procedural History

Mompoint instituted this action on May 23, 2018. D. 1. Defendants moved to dismiss, and the Court denied the motion without prejudice. D. 18. The Court explained that Mompoint had failed to allege the required elements for defamation and "fail[ed] to state her race in the complaint or make any allegations tying her race or gender to any alleged discrimination," but allowed Mompoint to amend her complaint. Id. at 5. Accordingly, on January 14, 2019, Mompoint filed an amended complaint, D. 23, and Defendants once again moved to dismiss, D. 26. The Court heard the parties on the pending motion on March 18, 2019 and took the matter under advisement. D. 31.

## V. Discussion

### A. Title VII Race Discrimination

#### 1. *Disparate Impact*

Title VII prohibits "not only overt discrimination but also practices that are fair in form, but discriminatory in operation." Rodriguez v. United States, 852 F.3d 67, 75 (1st Cir. 2017) (quoting Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971)). Disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but in fact fall more harshly on one group than another and cannot be justified by business necessity." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977). To state a prima facie case of

disparate impact under Title VII, a plaintiff must first "identify the challenged employment practice or policy and pinpoint the defendant's use of it." EEOC v. Steamship Clerks Union, Local 1066, 48 F.3d 594, 601 (1st Cir. 1995). "Second, the plaintiff must demonstrate a disparate impact on a group characteristic, such as race, that falls within the protective ambit of Title VII." Id. "Third, the plaintiff must demonstrate a causal relationship between the identified practice and the disparate impact." Id.

Mompoint has not satisfied the first prong because she has failed "pinpoint" a policy or practice that has a disparate impact on black employees or job applicants at Mass DOE. "[I]t is not enough to simply allege that there is a disparate impact on workers or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." Smith v. City of Jackson, 544 U.S. 228, 241 (2005) (citation and internal quotation marks omitted) (emphasis in original). Mompoint does not, for example, point to any educational, examination or background check requirements that allegedly discriminate against black candidates. Cf. Griggs, 401 U.S. at 425-26 (challenging policy requiring high school education or the passing of a standardized general intelligence test as a condition of employment or transfer at power company). To the extent Mompoint has identified the practice of "rarely select[ing] black employees for professional development opportunities" that prepare them for permanent positions as a policy with a disparate impact, D. 23-1 ¶ 5, Mompoint has not alleged a factual basis for that claim. See Burrell v. Bd. of Trs. of the Univ. of Me. Sys., No. CIV. 99-107-P-C., 2000 WL 762075, at *9 (D. Me. 2000) (granting defendant employer's motion to dismiss plaintiff employee's disparate impact claim because plaintiff's "conclusory statement that defendant had a policy of a 'failure to train' that had a disparate impact on [p]laintiff because of

6

his race [could not] sustain the claim"); see also Steamship Clerks Union, 48 F.3d at 600-601 (noting that Title VII prohibits "disparate impact discrimination, arising from 'the consequences of employment practices, not simply the motivation'") (citation omitted) (emphasis in original); Wong v. Resolve Tech., Civ. A. No. 10-11642-DJC, 2011 WL 3157198, at *8 (D. Mass. July 25, 2011) (granting motion to dismiss where plaintiff failed to identify a practice that had a disparate impact on a particular class); Greater Indianapolis Chapter of the Nat'l Ass'n for the Advancement of Colored People v. Ballard, 741 F. Supp. 2d 925, 940 (S.D. Ind. 2010) (granting motion to dismiss because "plaintiffs ha[d] not alleged a specific, facially neutral employment policy – a requirement for pleading a disparate impact claim under Title VII"). Have failed to allege any particular, facially neutral practice or policy, she also failed to allege plausibly the causal link between such practice and the alleged disparate impact. Although Mompoint does allege certain statistics regard the diversity (or lack thereof) in the Mass DOE, see D. 23-1 ¶ 11, she does not plausibly allege how such statistics reflect the disparate impact of any particular policy or practice or the causal relationship between the two. For all of these reasons, Mompoint has failed to state a disparate impact claim.

2.  *Disparate Treatment*

Title VII also makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Disparate-treatment cases present the most easily understood type of discrimination and occur where an employer has treated [a] particular person less favorably than others because of a protected trait." Ricci v. DeStefano, 557 U.S. 557, 577 (2009) (alteration in original) (internal citations and quotation marks omitted).

Absent direct evidence of discrimination, courts apply the burden-shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) to Title VII claims. Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 673 (1st Cir. 1996). Under the McDonnell Douglas framework, the plaintiff must first make out a prima facie case of discrimination by showing that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the job; (3) the employer took an adverse employment action against [her]; and (4) the position remained open or was filled by a person with similar qualifications." Cham v. Station Operators, Inc., 685 F.3d 87, 93 (1st Cir. 2012) (quoting Kosereis v. Rhode Island, 331 F.3d 207, 212-13 (1st Cir. 2003)). It is undisputed that Mompoint is a member of a protected class. D. 23-1 ¶ 1. Mompoint arguably has plausibly alleged fourth prong, although her allegations are thin, by alleging that the supervisor hired instead of her had less supervisory, leadership and education experience than she did, although it is unclear for which position this allegedly less qualified supervisor was hired in her stead. D. 23-1 ¶ 1; see Young v. Brennan, Civ. A. No. 16-12001-FDS, 2017 WL 1843696, at *5 (D. Mass. May 8, 2017) (denying employer's motion to dismiss because the "largely conclusory" allegations in a race discrimination complaint were "just barely [] sufficient to meet the relatively low threshold for stating a plausible claim for discrimination under Title VII"); see also Grajales v. P.R. Ports. Auth., 682 F.3d 40, 49 (1st Cir. 2012) (citation omitted) (reversing grant of a motion to dismiss a discrimination claim and noting that "'[s]moking gun' proof of discrimination is rarely available, especially at the pleading stage"). Mompoint, however, has at least failed to meet her burden under the second or third prongs and has therefore failed to assert a prima facie case.

As to the second prong, Mompoint has not explained how she was qualified for any position to which she applied, nor has she described any particular position she was denied. The only positions she alleges to have been denied are the permanent position to which she applied in

2011 and the Educator Quality position for which she applied two years before her termination. See D. 23-1 ¶ 4. She does not list any qualifications for those jobs.

As to the adverse employment action required under the third prong, Mompoint does not allege that she applied to any jobs at Mass DOE in 2014 or 2015, when her funding through Race to the Top was set to expire. Of course, a failure to hire may constitute an adverse employment action under Title VII, see Bennett v. Capitol BC Rests., LLC, 54 F. Supp. 3d 139, 145-46 (D. Mass. 2014), but "in the absence of a job application, there cannot be a failure-to-hire," Velez v. Janssen Ortho, LLC, 467 F.3d 802, 807 (1st Cir. 2006) (considering a retaliatory failure-to-hire claim under Title VII); see Avci v. Brennan, 285 F. Supp. 3d 437, 442 (D. Mass. 2018) (quoting id.) (holding that plaintiff had failed to establish a prima facie case of failure to hire because he "did not establish that he had 'applied for a particular position'").

To the extent Mompoint argues that she was denied professional development opportunities and that her lack of professional development caused her to not receive a permanent position, Mompoint has also failed to make out a prima facie case. As explained above, she has not alleged that there were any professional development opportunities for someone with her qualifications or that those opportunities were given to an employee with fewer qualifications.

Mompoint has also not met her burden of establishing a prima facie case regarding her inability to bring children to work or to telecommute because her allegations do not include the requisite "adverse employment action." "An adverse employment action 'typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" Cham, 685 F.3d at 94 (quoting Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010)) (internal quotation marks omitted). Here, Mompoint does not allege that any

9

employment consequence arose after she was told children were not allowed in the workplace or that bringing children into the workplace was part of her benefits. As to the telecommuting policy, even if the inability to telecommute were considered an adverse employment action, Mompoint acknowledges that in February 2015, once she gave Peske a doctor's note, she was permitted to telecommute for medical reasons. D. 23-1 ¶ 9. Although Mompoint alleges that she was prohibited from telecommuting in June 2015, she does not allege that she provided a doctor's note at that time or that any white employees were permitted to telecommute without providing a doctor's note. See id. In sum, Mompoint has not stated a plausible claim in her amended complaint for disparate treatment under Title VII even after given the opportunity to amend her original pleading.

> 3. *Individual Liability Under Title VII*

To the extent Mompoint asserts Title VII claims against Peske and Bettencourt, the Court allows Defendants' motion to dismiss, because "[t]here is no individual liability under Title VII." Fantini v. Salem State Coll., 557 F.3d 22, 31 (1st Cir. 2009).

In the opposition to the motion to dismiss, Mompoint argues that she can pursue individual liability for discrimination against Peske and Bettencourt under Mass. Gen. L. c. 151B, which makes it unlawful for "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden" by the state discrimination laws. Mass. Gen. L. c. 151B, § 4(5). The Court also understands Mompoint now to be asserting that she filed a complaint with the Massachusetts Commission Against Discrimination, satisfying her burden to exhaust her administrative remedies under state law. See Quarterman v. City of Springfield, 716 F. Supp. 2d 67, 77 (D. Mass. 2009); D. 28 at 5. Even assuming Mompoint had pled a claim under Chapter 151B and satisfied the administrative prerequisites, however, her claim for individual

10

liability for race discrimination would still fail. "For claims of race [] discrimination under [Title VII] and [Chapter] 151B, a plaintiff must demonstrate that (1) [s]he is within a protected class; (2) [s]he applied for and was qualified for the position that the employer was seeking to fill; (3) despite [her] qualifications [s]he was rejected; and (4) after [her] rejection, the position was filled by a person of plaintiff's qualifications, not within the protected class." Heard v. Commonwealth of Massachusetts, Civ. A. No. 02-12498-DPW, 2003 WL 21960726, at *3 (D. Mass. Aug. 11, 2003); see Dichner v. Liberty Travel, 141 F.3d 24, 30 (1st Cir. 1998) (explaining that Title VII claims and Chapter 151B claims require the same prima facie showing of discrimination). As explained above as to her Title VII claim, Mompoint has also failed to allege sufficient facts to state a plausible claim for discrimination under c. 151B, particularly as to the second and third prongs of this claim.

### B. Defamation

"To prevail on a claim of defamation, a plaintiff must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." White v. Blue Cross & Blue Shield of Mass., 442 Mass. 64, 66 (2004) (footnote and citation omitted).

As to the claims against the individual Defendants, Mompoint has not identified any false statement published by Peske or Bettencourt capable of damaging her reputation that caused her economic loss or that are actionable without proof of same. See White, 442 Mass. at 69 n.10 (noting that "[d]efamatory statements that harm a plaintiff's professional or business reputation are actionable without proof of economic loss") (citation omitted). At most, she alleges her colleagues saw on the staff recognition board that her work was "good," rather than "great."

11

Mompoint does not allege that any damages resulted. Mompoint also acknowledges that after discussing her concerns about the staff recognition board with Peske, "Peske started to use a variety of word[s] to describe all staff members including staff of color." D. 23-1 ¶ 8. At the motion hearing, Mompoint explained that people outside her department would come for meetings and see the board, but even assuming this to be true, Mompoint still not allege that the statements were false or that such commentary, if seen by a third party, caused her harm to her professional reputation or could cause her economic harm.

To the extent Mompoint asserts a claim against Mass DOE for defamation, even if she had stated a plausible claim, the Eleventh Amendment would bar that claim. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." Bd. of Trs. v. Garrett, 531 U.S. 356, 363 (2001). The guarantee applies to any agency or department of the State. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). There are limited exceptions to this rule, see, e.g., Ex parte Young, 209 U.S. 123 (1908), but none apply here. Additionally, the Massachusetts Tort Claims Act prohibits tort suits against public employers such as Mass DOE. Mass. Gen. L. c. 258 § 10 (stating that liability under the Massachusetts Tort Claims Act "shall not apply to . . . (c) any claim arising out of an intentional tort, including . . . libel [or] slander"); Barrows v. Wareham Fire Dist., 82 Mass. App. Ct. 623, 624 (2012) (holding that the Massachusetts Tort Claims Act barred defamation claim against a municipality because the Act specifically includes "both forms of defamation, slander and libel"). The Court, therefore, allows Defendants' motion to dismiss Mompoint's claim for defamation against all Defendants.

VI. **Conclusion**

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss, D. 26.

**So Ordered.**

                                                                   <u>/s/ Denise J. Casper</u>
                                                                   United States District Judge